# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL A., ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW M. SAUL, Commissioner of the ) <br> Social Security Administration,[1] ) <br> ) <br>     Defendant. ) | No. 19-cv-2143 <br><br> Magistrate Judge Susan E. Cox |

## MEMORANDUM OPINION AND ORDER

Plaintiff Michael A.[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. The Parties have filed cross motions for summary judgment.[3] For the reasons detailed below, the Commissioner's Motion for Summary Judgment (dkt. 22) is granted and Plaintiff's motion (dkt. 13) is denied.

## I. Background

On March 18, 2016, Plaintiff filed claims for DBI and SSI with an onset date of August 1, 2015. (R.18.) The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was originally convened on September 27, 2017, but postponed to allow Plaintiff to find counsel. (R. 65-74.) The hearing was ultimately held on February 14, 2018 with Plaintiff appearing *pro se*. (R. 18.) On April 25, 2018, the ALJ denied Plaintiff's claim, finding him not disabled under the Act and therefore

---

[1] As of June 4, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule Civil Procedure 25(d), he is hereby substituted as Defendant.

[2] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name(s).

[3] Plaintiff filed a Memorandum in Support of Remand (Dkt. 13), which this Court construes as a motion for summary judgment.

ineligible for benefits. (R. 18-27.) At the Social Security Administration Appeals Council (the "Appeals Council") level, Plaintiff was represented by counsel, who informed the Appeals Council that she did not have a full recording of the February 14, 2018 hearing. (R. 323.) The Appeals Council then denied Plaintiff's request for review on January 23, 2019 (R. 1-8), leaving the ALJ's decision as the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Plaintiff filed his appeal of the Commissioner's denial of his application on March 27, 2019. (Dkt. 1.) When the Certified Administrative Record was filed before this Court, it contained an incorrect transcript of the hearing before the ALJ; the first several pages of the transcript are from the September 2017 hearing before "mak[ing] an abrupt shift to the 2018 hearing on page 5." (Dkt. 13 at 12.) The Commissioner admitted this was a mistake, but noted that the full recording of the hearing existed and "should have been available to Plaintiff's counsel once she entered her appearance before the agency." (Dkt. 23 at 3.) According to the Commissioner, the recording is in two segments because there was a brief off-the-record conversation to correct some technical problems during the hearing; the Court's review of the transcript confirms that an off-the record discussion took place during the hearing. (Dkt. 23 at 3 n.2.) The Commissioner then filed a supplemental record with the corrected transcript on December 12, 2019. (Dkt. 27.)

The medical record in this case is relatively sparse. The majority of the medical record consists of treatment notes from Plaintiff's pain management doctor, Dr. David P. Calimag, M.D. The notes are entirely *pro forma* documents that indicate Plaintiff's pain level, how often Plaintiff would follow-up with Dr. Calimag, and Plaintiff's pain medication refills. (R. 353-401, 433-507.) On the whole, Dr. Calimag's documentation reflects that Plaintiff suffered from low back pain with radiculopathy, and was prescribed 10 fentanyl patches and 120 roxicodone on a monthly basis. (*Id.*) From time to time, Dr. Calimag would note that Plaintiff was edematous. (R. 447, 485.) However, the records do

not shed much light on what, if any, limitations resulted from Plaintiff's conditions or Dr. Calimag's views on Plaintiff's ability to work.

On May 22, 2015, Plaintiff presented to the emergency room at St. James Hospital after his wife called an ambulance because he had been sleeping since noon the previous day. (R. 330.) Plaintiff's chief complaints were leg swelling and fatigue. (*Id.*) Plaintiff was diagnosed with drowsiness, chronic edema, renal insufficiency, and polysubstance abuse.[4] (R. 329.) None of the diagnostic tests performed indicated any additional problems. (R. 333, 335.) He was discharged to his home later that day. (R. 336.)

On May 11, 2016, Plaintiff had an X-ray taken of his lumbar spine, which showed "[u]nremarkable radiographs of the lumbar spine." (R. 410.) That same day, Plaintiff had a consultative examination with Dr. Sarat Yalamanchili, M.D. (R. 411.) Dr. Yalamanchili found no anatomic abnormality in either lower extremity, no limitation in range of motion of any joint, normal muscle strength, and generalized non pitting edema. (R. 414.) She noted that Plaintiff complained of low back pain, generalized edema, and an inability to walk long distances. (R. 416.) She diagnosed Plaintiff with generalized edema, degenerative disc disease of the lumbar spine, gastroesophageal reflux disease, and attention deficit hyperactivity disorder. (*Id.*)

The record also contains notes from two treatment dates at Aunt Martha's Youth Service Center. On September 13, 2016, Plaintiff complained of swelling in his hands and legs, stomach pain, vomiting, and shortness of breath. (R. 425-26.) On October 17, 2016, he returned to Aunt Martha's to get his lab results; of the relevant results, Plaintiff was diagnosed with hypothyroidism, chronic stage 3 kidney disease, backache, severe obesity, hypertension, and anemia. (R. 421-423.)

---

[4] The ALJ found that Plaintiff's renal issues were well controlled with minimal intervention, and Plaintiff has not challenged that finding on appeal. (R. 21.) Plaintiff was diagnosed with polysubstance abuse because his bloodwork came back positive for benzodiazepines, despite not having a prescription for them, and he admitted to taking his wife's Xanax for frequent panic attacks. (R. 335.)

At the administrative hearing before the ALJ, Plaintiff testified he needed to "constantly" switch positions and elevate his feet because of his edema. (R. 537.) That is the only reference in the record to Plaintiff needing to elevate his feet. During the examination of the Vocational Expert ("VE") at the hearing, the ALJ included a line of questioning about a hypothetical individual who was limited to sedentary work and would need the option to elevate his or her legs. (R. 548.) The VE testified that a need to elevate the legs would be an accommodation, which would "not be considered competitive employment." (*Id*.) However, if the elevation required were one foot or less, that would not preclude employment. (*Id*.)

The ALJ issued a written decision on April 25, 2018, following the five-step analytical process required by 20 C.F.R. § 416.920. (R. 18-27.) At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 1, 2015. (R. 20.) At step two, the ALJ concluded that Plaintiff has the severe impairments of obesity and edema. (*Id*.) At step three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of a listed impairment. (R. 22.) The ALJ next found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following restrictions: he could frequently climb ramps and stairs, never climb ladders, ropes, and scaffolds, and could frequently handle and finger bilaterally. (*Id*.) At step four, the ALJ concluded that Plaintiff was unable to perform his past relevant work. (R. 25.) At step five, however, the ALJ determined that, in light of Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (R. 26.) These findings led to the conclusion that Plaintiff is not disabled as defined by the Act. (*Id*.)

## II. Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-

4

step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920(a)(4)(i)-(v). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id*. At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show there are significant jobs available that the claimant is able to perform. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence

and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). Even where "reasonable minds could differ" or an alternative position is also supported by substantial evidence, the ALJ's judgment must be affirmed if supported by substantial evidence. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Scheck*, 357 F.3d at 699. On the other hand, the Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535,539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

## III. Discussion

### A. The Appeals Council Did Not Err by Failing to Remand the Case

Plaintiff argues the Appeals Council violated HALLEX I-2-6-46 by failing to remand the case to the ALJ. HALLEX I-2-6-46 covers what the Appeals Council must do in cases where there is a partial omission or inaudible portion of a hearing recording. https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-46.html. The rule states that the Hearing Office staff must determine if the problem can be rectified, and, if so "take the necessary actions, document the actions taken, and add the documentation to the claim(s) file;" if the issue cannot be corrected, the Hearing Office staff must alert the Appeals Council and request a remand. HALLEX I-2-6-46, https://www.ssa.gov/OP_Home/hallex/I-02/I-2-6-46.html.

The Court does not believe HALLEX I-2-6-46 requires remand in this matter. First, the Court is not certain the hearing recording was partially missing or inaudible at all. Obviously, a full version of the recording existed, as a full transcript has been produced in this case. Moreover, the original recording was in two parts, which suggests that perhaps Plaintiff's counsel mistakenly believed that the first portion of the recording was the entirety of the recording and was not aware of the second portion. Second, even if Plaintiff is correct and the Appeals Council did not have the full recording, Plaintiff does not dispute that a full recording of the hearing existed and any omission could have

been rectified by the Hearing Office staff. In situations where the technical problems can be fixed, HALLEX I-2-6-46 does not require remand, but instead states that Hearing Office staff must "take the necessary actions, document the actions taken, and add the documentation to the claim(s) file." To the extent there was an error, the Hearing Office staff's failure to correct the technical problem with the hearing recording is the only mistake that occurred at the administrative level. However, "administrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011) (citing *Spiva v. Astrue*, 628 F.3d. 346, 353 (7th Cir. 2010)). The Court is confident the Appeals Council would have reached the same conclusion had the Hearing Office staff fixed any technical issues with the recording, and believes it would be a waste of time and resources for both parties to remand on this basis. *See McKinzey*, 641 at F.3d at 892. Therefore, the Court denies Plaintiff's motion on this issue.

### B. The ALJ Did Not Err in Failing to Provide for Foot/Leg Elevation

Plaintiff's final argument for remand is that the ALJ erred by failing to consider Plaintiff's need to elevate his feet in the ALJ's written decision. Therefore, the question before the Court is whether the ALJ's failure to discuss leg elevation in her opinion was reasonable. The Court believes the decision not to include leg elevation was reasonable, considering that there was no indication anywhere in the record that any medial professional believed Plaintiff needed to elevate his legs or that Plaintiff complained of needing to elevate his legs to any doctor. The only reference to leg elevation was a passing mention by Plaintiff in his hearing testimony. It is well established that the ALJ is not required to consider every piece of evidence in reaching a decision, but must only build a logical and accurate bridge. *See, e.g., James G. v. Saul*, 2019 WL 4305518, at *8 (N.D. Ill. Sept. 11, 2019). The ALJ later included that limitation in one of the several hypothetical questions he posted to the VE, but doing so does not require the ALJ to consider that limitation in the final written

7

decision. In short, the ALJ was able to write a reasonable, well-supported opinion without considering Plaintiff's reported need to elevate his legs, and it was not reversible error to omit that issue from the opinion. Additionally, as above, any error than can be ascribed to the omission is harmless. The Court has reviewed the entirety of the record and there is no support for Plaintiff's need to elevate his legs anywhere other than a few sentences in his hearing testimony. Even if the Court were to remand on this issue, it is clear that the ALJ would reach the same opinion, considering that she queried the VE on the issue and ultimately determined it was so irrelevant as to not include it in her opinion. Remanding on this issue would constitute a waste of time and resources for both Plaintiff and the Commissioner, and the Court will not do so. The Court denies Plaintiff's motion on this argument as well.

**IV. Conclusion**

For the foregoing reasons, the Commissioner's Motion for Summary Judgment (dkt. 22) is granted and Plaintiff's motion (dkt. 13) is denied. The ALJ's opinion is affirmed.

Entered: 4/14/2020

_____

U.S. Magistrate Judge, Susan E. Cox